### HUNT *v.* HAVEN & A., ADM'RS.

A replication is not subject to the charge of duplicity unless it sets up two or more answers to the matter relied on as a defence in the plea; but as many separate and independent facts and circumstances may be stated in it as are necessary to make a perfect answer to the plea.

One cannot be a privy in estate to a judgment or decree unless he derives his title to the property in question subsequent to, and from some party who is bound by, such judgment or decree.

W. mortgaged a farm to B., and afterwards mortgaged the same farm to S.: after the mortgage to S., B. and W. had a long litigation in regard to the land conveyed in the mortgage to B., in which B. prevailed, and obtained possession of the land. *Held*, that S. was not a privy in estate with W. to the judgment in that case, so as to be bound or affected by it, but that he might, in a writ of entry against B. founded upon his mortgage, litigate the same questions which had been litigated and decided in the suit B. *v.* W.

The fact that S. may have known of the pendency of the proceeding between B. *v.* W., and may have aided W. in his suit, and even employed and paid counsel to assist W. in the suit with B., does not make S. either a party or a privy in estate with W., so that he will be bound by the judgment in that suit.

A *lis pendens* is not a notice to anybody to affect or operate upon existing rights. But the institution of a suit for the recovery of a

specific property, is held in equity to be notice to a purchaser so as to affect and bind his interests in the decree, when such purchase is made *pendente lite*, and from a party to such suit; and the *lis pendens* begins from the service of the subpœna after the bill is filed.

The demandant counted on his own seizin without stating title. The defendants pleaded that the plaintiff claimed by a particular title, setting it out, and alleged matter in estoppel. The plaintiff replied, answering and avoiding the estoppel, and the defendants demurred to the replication for duplicity. *Held*, that there must be judgment against the defendants,—first, because the replication was held good; and second, because, however the replication might be, the defendants had committed the first error in pleading,—their plea to the declaration being bad in substance, and not cured by pleading over.

WRIT OF ENTRY, by William P. Hunt against Geo. W. Haven and Jabez B. Upham, administrators of Joseph Bell, counting upon the plaintiff's own seizin in fee, and a disseizin by the defendants. The defendants pleaded (1) *Nul disseizin*. (2) In substance, that the plaintiff has no title except under a deed from Joshua Woodward to James Woodward, dated June 9, 1843; that Joshua had previously mortgaged the demanded premises to Joseph Bell, by deed dated February 28, 1842; that the administrators of said Bell brought their bill in equity for the purpose of obtaining possession of the premises and for foreclosure against both the said Joshua and the said James, and obtained a decree against said James Woodward and the administrators of said Joshua for the possession of the demanded premises, and for the foreclosure of said mortgage to Joseph Bell; that the title litigated in said bill in equity is the same title and the only title under which the plaintiff now claims; and that the plaintiff had notice of said bill in equity, at &c., on &c.

The plaintiff joins the issue upon the first plea, and to the second plea replies,—(1) That the plaintiff did not have notice of said suit in equity, and that Joshua Woodward did not convey the demanded premises to said Bell, and concludes to the country. (2) In substance, that the plaintiff did not have notice of said bill in equity; that the only title of Joshua Woodward was by deed from one Ladd, dated November 23, 1840; that the consideration was paid by James Woodward, &c., and that Bell took with notice of this trust, and concludes with a verification. (3) As in No. 1, omitting the denial of notice of said bill in equity, and concludes to the country. (4) As in No. 2, omitting the denial of notice of the said bill in equity.

The defendants demur to the plaintiff's first replication to the defendants' second plea for duplicity, in this,—that in said replication the plaintiff alleges (1) "that he did not have notice of the suit in equity mentioned in the defendants' plea, and (2) that said Joshua Woodward did not convey the demanded premises to said Joseph Bell, as in said plea is alleged." The defendants also demur to the second

replication of the plaintiff to the defendants' second plea for duplicity in this,—(1) " that in said replication the plaintiff denies that he had notice of said suit in equity, as in the plea of the defendants is alleged ; (2) that the plaintiff, in the same replication, alleges that the demand-,ed premises were conveyed by one Ladd to Joshua Woodward, in trust for James Woodward ; that thereby the title to the premises was vested in James Woodward ; and that said Joseph Bell had notice of these facts before taking the mortgage, in the plea of the defendants mentioned." As to. the plaintiff's third replication to the defendants' second plea, the defendants join the issue to the country. As to the plaintiff's fourth replication to the defendants' second plea, the defendants in substance protesting that the deed from Ladd to Joshua Woodward was not in trust as alleged in said replication, denies that Joseph Bell had notice of any such trust, and concludes to the country.

The plaintiff joins in the demurrers and in the issues to the country.

The plaintiff desired a trial of the issues of fact at the September term, 1871 : but the defendants consenting to a further extension of six months in addition to a former extension of the time fixed by the decree in *Bell* v. *Woodward* for a redemption, the cause is continued, and the questions arising upon the demurrers, and upon the facts hereinafter stated, are reserved.

It is admitted that the plaintiff's title is, as assignee of a mortgage of the demanded premises from James Woodward to Phineas Spaulding, dated ——, 1850, subsequent to the mortgage of Joshua Woodward to Joseph Bell, and prior to the suit in equity *Bell* v. *Woodward*, and that James Woodward's title was derived from Joshua Woodward, by deed made subsequent to said mortgage from Joshua Woodward to Joseph Bell. The defendants utterly deny the alleged trust in favor of James Woodward, in the hands of Joshua Woodward, as having been created by the deed Ladd to Joshua Woodward. It is agreed that the record in suit *James Woodward* v. *Geo. W. Haven* and *Jabez B. Upham*, administrators of Joseph Bell, may be considered, and that any defence which that record, or the questions which have been adjudicated in that case, will afford the defendants in this case, may be considered and determined, the same as if properly pleaded.

The plaintiff claims that the administrators of Joseph Bell had knowledge of the said mortgage James Woodward to Phineas Spaulding, at the time of filing the bill *Bell* v. *Woodward*. The defendants claim that the said Spaulding had knowledge of the filing and pendency of the bill in equity *Bell* v. *Woodward*, and that the plaintiff in this suit also had such knowledge ; and the defendants also claim that the said Spaulding and the plaintiff in this case aided said James Woodward in defending said bill in equity *Bell* v. *Woodward*,—the defendants claiming that said Spaulding is the mortgagee, and was the holder of the mortgage on which this suit is founded until he assigned to the plaintiff; that the plaintiff is a man of means, and a brother-in-law of James Woodward, and knew about the controversy between said Bell in his lifetime, and his administrator after his decease, with

James and Joshua Woodward ; that the plaintiff assisted said James Woodward in defending the suit against him and the said Joshua, in which the judgment was rendered which has been pleaded in this case ; that the plaintiff so assisted said James Woodward by furnishing him money with which to defend said suit, and became responsible to counsel for their services in the same, and that this was done by the plaintiff all through said suit ; that said Spaulding, while he held said mortgage, also assisted said James Woodward in defending said suit, and, among other things, he employed and became responsible to C. R. Morrison, a counsellor of this court, for services as counsel for said Woodward in said suit, and paid him therefor ; and that said Spaulding, while holding said mortgage, became responsible to other persons for services and expenses done and incurred in defending said suit, and actually paid the same.

It is understood that the claims of the parties may be treated as admitted, and that their admissions may be considered, for the purpose of determining the questions of law in this case and for no other purpose, and that the demurrers shall be decided independently of such claims and admissions.

The defendants contend that the record and decree in *Bell* v. *Woodward* are admissible and conclusive in this suit, which the plaintiff denies. The questions of law were reserved.

*C. R. Morrison* and the *Rands,* for the plaintiff.

I. Treating the plea as sufficient, the replications demurred to are not double.

1. So far as relates to the first replication, the plea is, in substance, that Joshua Woodward mortgaged the Samuel Ladd farm to Joseph Bell, and that the plaintiff is not at liberty to deny it, because of the former suit. The replication is, in effect, that Joshua Woodward did not so mortgage the demanded premises, and that the plaintiff, having had no notice of that suit, has a right to say so. This does not make the replication double. The plaintiff must deny notice of that suit, that it may appear that he is at liberty to deny that the land was mortgaged to Bell. On the other hand, to deny notice of that suit, and stop there, would amount to nothing ; for it is immaterial whether the plaintiff is bound by the former judgment or not, if the demanded premises were, in fact, mortgaged to Bell.

2. So, too, as to the second replication. The plea, so far as affects this replication, alleges that the sole title of James Woodward was by the deed of Joshua Woodward, of June 9, 1843 ; that the title under which the plaintiff claims " is the same title which was considered in said suit in equity, and there adjudged to be bad and worthless as against the title of these defendants ; " and that the plaintiff had notice of that suit, and is bound by it. The replication, treating the allegation that the title is the same as true in effect, says, that notwithstanding this adjudication, James Woodward had a further title by virtue of the deed of Ladd to Joshua Woodward (the same being upon a result-

ing trust, and Bell having notice of the trust), and that the plaintiff, having had no notice of the suit, is at liberty to set up that title. He denies notice, that it may appear that he is at liberty to set up the resulting trust; and he sets up the trust in addition to his denial of notice, because it is of no consequence that he is not bound by the decree, if his title is only as alleged in the plea. The case therefore comes within the rule that, where several distinct facts taken together form but one ground of avoidance, they do not render a replication double, and must be stated. *Tebbets* v. *Tilton,* 24 N. H. 122; *Galusha* v. *Cobleigh,* 13 N. H. 79, 83; *Watriss* v. *Pierce,* 36 N. H. 232.

II. The defendant's counsel insist that the plaintiff is estopped by the decree in *Bell* v. *Woodward,* and the case is now before the full bench for solemn adjudication. " No point is clearer than that a party is not bound by a judgment to which he is not a party or privy." *Horn* v. *Thompson,* 31 N. H. 562, 574; *Hall* v. *Hall,* 46 N. H. 240, 243. The plea does not show that the plaintiff was a party, but the reverse. It alleges that he has no title, except by deed subsequent to the mortgage (not the suit) of Bell; and the question is, whether this makes him a privy in estate to the decree in that suit. What is a privy in estate to a judgment or decree?

[Upon this point the following cases were cited and commented on : *Taylor* v. *Ranney,* 4 Hill. 621; *Dickinson* v. *Lovell,* 35 N. H. 16; 2 Smith's Lead. Cases 443; Stark. Eq., 9th ed., *328; *Campbell* v. *Hall,* 16 N. Y. 575; *Haines* v. *Beach,* 3 Johns. Ch. 459; *Flanders* v. *Davis,* 19 N. H. 139, 149; 2 Smith's Lead. Cases in Eq. 171, 174; Story's Eq. Pl. 194; 2 Roll. Abr. 680; 4 Kent's Com. 185; Story's Eq. Pl. 193; Stark. Ev., 4th ed., 328; *Whitcher* v. *Benton,* 48 N. H. 157; *Moseley* v. *Cocke,* 7 Leigh. 224; *Littleton* v. *Richardson,* 34 N. H. 188; *Andrews* v. *Denison,* 16 N. H. 469; *French* v. *Parish,* 14 N. H. 496; 2 Smith's Lead. Cases (1847) 552, 553; *Jackson* v. *Griswold,* 4 Hill 522; *Douglass* v. *Howland,* 24 Wend. 35; *Hall* v. *Hall,* 46 N. H. 240, 243; *Green* v. *Cross,* 45 N. H. 574, 578.]

III. The plea is bad in attempting to set up the plaintiff's title for him. The defect is in a matter of *substance,* and is reached by the demurrer. *Potter* v. *Baker,* 19 N. H. 166; *Whittemore* v. *Shaw,* 8 N. H. 393; *Claggett* v. *Simes,* 31 N. H. 22. There is no express admission in either replication that the plaintiff had no title except as stated in the plea; and a defect in *substance* cannot be impliedly cured by the mere effect of pleading over thereto. 1 Ch. Pl., 9th ed., *672.

IV. Upon the whole case, it is respectfully submitted that no sufficient reason appears why the plaintiff, who for two terms has been ready and pressing for a trial, should be longer debarred or hindered from having a trial of his case upon its merits, wholly unaffected by any former or pending suits between these defendants and James Woodward.

*H. Bingham* and *Hatch,* for the defendants.

There is no more wholesome or better settled rule of the law than

the one that the judgment of a court of competent jurisdiction is conclusive upon parties and privies. *Batchelder* v. *Robinson*, 6 N. H. 12; *Hollister* v. *Barkley*, 11 N. H. 501; *Curtis* v. *Fairbanks*, 16 N. H. 542; *Hollister* v. *Abbott*, 31 N. H. 442.

In *Dickinson* v. *Lovell*, 35 N. H. 16, the plaintiff was the mortgagee of personal property, and the defendant was a deputy sheriff who had attached the mortgaged goods as the property of the mortgagor,—and the question was, whether or not the return of the deputy sheriff of the attachment was conclusive as to the parties; and it was held by the court, that although the plaintiff was not technically a privy in estate as to the return, yet nevertheless the return was conclusive and bound the parties—*vide* last named case.

In our view, if the plaintiff in the case now before the court is held not to be a privy as it respects the judgment set up in the defendants' plea for the reason stated in *Dickinson* v. *Lovell*, then said judgment ought to be held conclusive on the parties in this case for the same reason that the return of the attachment is held to be conclusive upon the parties in *Dickinson* v. *Lovell*. But we say that the plaintiff is privy in estate to the judgment *Bell* v. *Woodward*, according to the definition of what constitutes a privy in estate in *Dickinson* v. *Lovell*; that he had actual notice of the suit *Bell* v. *Woodward*, and that he aided in that defence. This would make him privy in estate, according to all the authorities, not excepting any. *Valentine* v. *Farnsworth*, 21 Pick. 176; *Warren* v. *Cochran*, 27 N. H. 339. But again, the litigation in *Bell* v. *Woodward* is older than the mortgage to Phineas Spaulding: it began in 1849.

We say that the commencement of the litigation in *Bell* v. *Woodward* was constructive notice to Hunt, and the fact that different suits were pending does not limit the constructive notice to the period in which the last suit was pending. The title of the plaintiff is subsequent to the litigation, "the *pendente lite*," in *Bell* v. *Woodward*, and so the plaintiff had constructive notice, and for that reason is a privy to the judgment. 1 Story's Eq. Jur. 393, secs. 405, 406, 407, 408; *Bishop of Winchester* v. *Paine*, 11 Ves. 194, and cases cited; *Murray* v. *Ballou*, 1 Johns. Ch. 576; *Murray* v. *Finster*, 2 Johns. Ch. 156.

As to the demurrer to the plaintiff's first and second replications, we say that it is well taken; that those replications are double; that they both state two distinct and independent grounds, each of which, independent of the other, is an answer to the defendants' plea. Hence the demurrer for duplicity is well taken. 1 Chitty on Pleading 226 and 531; *Wadleigh* v. *Pillsbury*, 14 N. H. 375; *Mooney* v. *Demerrit*, 1 N. H. 187; *Watriss* v. *Pierce*, 36 N. H. 232.

The suggestion by the plaintiff, that our plea is bad because it sets up the plaintiff's title for him, is answered when we say that the plaintiff has waived the objection he might have had by pleading over, and that the only way for the plaintiff to have availed himself of this objection was by demurrer. *Vide* cases cited by the plaintiff on this point.

SARGENT, J.   It is said, in 1 Ch. Pl. 226, that the rule relating to duplicity in pleading " precludes the parties, as well the plaintiff as the defendant, in each of their pleadings, from stating or relying upon more than one matter, constituting a sufficient ground of action in respect to the same demand, or a sufficient defence to the same claim, or an adequate answer to the precedent pleading of the opponent."

But he adds, on page 227, that " it is important to remember that several distinct facts or allegations, however numerous, may be comprised in the same plea or other pleading, without amounting to the fault of duplicity, if one fact or some of the facts be but dependent upon, or be mere inducement or introduction to the others, or if the different facts form together but one connected proposition, or entire matter or point."   " If a man pleads two things, where he is compellable to show both, this does not make his plea double."   4 Bac. Abr. Pleading, K. 2, p. 221.   Duplicity in a plea consists in alleging two or more distinct grounds of defence where one of them would be as effectual in law as all of them.   And in subsequent pleadings, in stating two or more matters in answer to the preceding plea, where one of them would be sufficient.   Gould's Pleading 419. But a single ground of defence is not necessarily confined to a single fact, since several connected facts may be, and very often are, necessary to constitute one single and complete answer to the action.   And the same remark is true of the subsequent pleadings.   If several facts are necessary to constitute one single and complete answer to the case made by the previous pleading, the replication or rejoinder is not double.   *Tibbets* v. *Tilton,* 24 N. H. 120, 122, 123, and cases cited ; *Galusha* v. *Cobleigh,* 13 N. H. 83 ; *Watriss* v. *Pierce,* 36 N. H. 232 ; *Russell* v. *Rogers,* 15 Wend. 353.

In this case the plea is, that Joshua Woodward mortgaged the Samuel Ladd farm to Joseph Bell before the deed to James Woodward, and that this fact has been settled by the former judgment, and that this plaintiff is bound and concluded by that judgment because he has no title except one derived from said Joshua Woodward through James Woodward, and that he had notice of said former judgment.

The replication to that plea is, that Joshua Woodward did not mortgage said Samuel Ladd farm to Joseph Bell, and that however that fact may have been decided in the former judgment, yet such judgment does not bind or conclude this plaintiff, because he had no notice of such judgment.   Now the mortgage to Bell was prior to the mortgage from James Woodward to this plaintiff, or to Spaulding, his grantor ; and, therefore, to deny notice of the former judgment alone would be no answer to the plea, because, if the land was first mortgaged to Bell, and the title of this plaintiff was subsequent to that mortgage and of the same land contained in that mortgage, he could only hold subject to that mortgage, whether or not he had notice of the judgment.   The plaintiff must deny notice of that suit and judgment in order to be at liberty to set up the fact that the land was not included in the Bell mortgage.   He must necessarily set up both these

facts in order to make a perfect answer to the defendants' plea. They are separate and distinct facts, but both together must be alleged to meet the case stated by the defendants,—which does not constitute duplicity.

The second replication stands on the same ground. It denies notice of the judgment in suit *Bell* v. *Woodward*, and then alleges that though Joshua Woodward may have mortgaged the premises to Bell before the deed to James Woodward, under whom the plaintiff claims, yet that Joshua, when he mortgaged to Bell, held the farm subject to a resulting trust to James Woodward, who paid the money for the same, and that Bell, when he took his mortgage, had notice of that resulting trust. These facts are all necessary to be stated in order to make out the case which the plaintiff sets up to meet the defendants' plea; and although several facts are necessary to make out the plaintiff's answer to the plea on this ground, we do not see how he could make a perfect answer to it and leave any of them out. The demurrers to the plaintiff's first and second replications to the defendants' second plea are therefore overruled.

Neither Spaulding nor this plaintiff was made a party to the original bill in equity (*Bell* v. *Woodward*), as it would seem they might have been; neither was either of them ever cited in as a party after the entry of the bill, as they might have been; nor did either of them obtain leave to come in, in any capacity; nor did Spaulding or the plaintiff ever employ counsel to appear, and none ever did appear, for them in the case. The offer of the defendants is to prove that they, Spaulding and the plaintiff, assisted Woodward in making his defence in that case, and employed and paid counsel for said Woodward; but we think that would not make Spaulding or the plaintiff a party to the suit in any such way as to bind or conclude them by the judgment. They were in no sense parties to the suit. *Goodall* v. *Marshall*, 14 N. H. 161; *Chamberlain* v. *Carlisle*, 26 N. H. 551; *Hayward* v. *Bath*, 38 N. H. 183.

The term parties includes all persons who are directly interested in the subject-matter in issue, who have a right to make defence, control the proceedings, or appeal from the judgment. Strangers are persons who do not possess these rights. *Duchess of Kingston's case*, 20 How. State Tr. 538, note; 3 Bouvier's Inst. 373. Parties are not only bound by a judgment, but all persons who are represented by the parties, and claim under them or are privy to them, are equally concluded by the same proceedings. 4 Bouv. Inst. 173. By privity is meant the mutual or successive relationship to the rights of property; and there are privies in estate, privies in blood, and privies in law; and the reason why persons standing in this relation to the litigating party are bound by proceedings to which he is a party is, that they are identified with him in interest; and wherever this identity exists, all are alike concluded. Privies are therefore estopped from litigating that which is conclusive upon him with whom they are in privity. The rule with regard to privies is, that its operation be mutual upon both parties:

both litigants must be concluded, or the proceedings cannot be set up as conclusive for either. Bouv. Inst. 374.

There must be a privity in or to the judgment between the party to the suit and the other person, in order to constitute him a privy. But what privity was there between Joseph Bell, or his executors, and this plaintiff, in the suit which Bell brought to foreclose his mortgage? To be sure, they both derive title, or claim to do so, originally from the same person, Joshua Woodward, but not by the same deed or at the same time. Woodward and the plaintiff have no more privity of estate than Bell and the plaintiff have. Both Bell and the plaintiff hold whatever rights their grantor had, at the date of the deed to each, to the land conveyed to each. The grantor may have had very different rights in the same land at the dates of the different deeds. He may have had a good title to the land conveyed at one time, and no title to the same land at the date of the other. There is no privity, that we can see, between this plaintiff, or Spaulding, and either of the parties to the former suit, either Bell or Woodward.

There might be collusion between Woodward and Bell in their suit, and Woodward might become defaulted, or might fail to put in a defence which he had it in his power to make, or make unwarranted admissions, and Bell might thus get possession of the mortgaged premises; and when this plaintiff came to bring his suit he should not be bound by Bell's judgment, to which he was no party, but might contest Bell's title upon any ground, and, among others, on the ground that Joshua Woodward had no title to the property when he gave Bell his mortgage, but that the same belonged to James Woodward, who had good right to convey, and that he did afterwards convey good title to Spaulding.

BELL, J., in *Dickinson* v. *Lovell*, 35 N. H. 16, says,—" A privy in estate is any person who must necessarily derive his title to the property in question from a party bound by a judgment, &c., subsequently to such judgment." That is, to constitute any person a privy in estate to any judgment, such person must necessarily derive his title to the property in question subsequent to such judgment, and from some party who is bound by such judgment. Judged by this rule, neither the plaintiff, nor his grantor Spaulding, was privy to this judgment. Their title to the land in controversy was derived long before the commencement of the suit in which the judgment was rendered.

And we think the authorities. go clearly to this extent. In *Flanders* v. *Davis*, 19 N. H. 139, 149, it is said " the witness, Morse, was incorrectly excluded. Bradish, under whom he claimed, took his deed from the tenant before the commencement of the suit. The judgment for the plaintiff, then, would be inoperative as to him, for he would not be privy to it. The tenant might have disclaimed that part. This witness might still litigate this question with the demandant. Had he claimed by a title subsequent to the suit, he would .be bound, for he would take subject to the contingency that the title on which his own rested might be defeated; and if it should be, his own title would be affected, of course."

" It is a general principle, that transactions between A and B, whether in or out of court, shall not have such an effect as will take away the previously acquired rights of third persons." *Taylor* v. *Ranney*, 4 Hill 621.

" But although a verdict and judgment for a party is evidence for one claiming in privity with him, this must be understood of a claim acquired subsequently to the verdict." Stark. Ev., 9th ed., *328.

A mortgagee is not estopped by a judgment between his mortgagor and a prior mortgagee, in a suit commenced after the execution of his mortgage—*Campbell* v. *Hall*, 16 N. Y. 575; nor by a decree of foreclosure in such a suit—*Haines* v. *Beach*, 3 Johns. Ch. 459; 4 Kent's Com. 185.

The subject of privies and estoppel is discussed in 2 Smith's Leading Cases 437, *442, *443, and the cases are cited and commented on, and the above views are fully sustained;—also, in 2 Leading Cases in Equity, 3d Am. ed., 175, and cases cited.

In some cases, third persons, standing in particular relations to the parties, have been held to become privies to the judgment by a notice *in pais* not appearing on the record of the proceedings: as, where a vendor with warranty has received explicit notice to defend an ejectment under which his vendee is evicted, he was held estopped, in a subsequent suit on the warranty, from denying that such eviction took place by title paramount. *Collingwood* v. *Irwin*, 3 Watts 311; *Paul* v. *Witman*, 3 Watts & Serg. 409. And although it may be doubted whether to produce this effect a rule of court should not have been required, yet the danger from that informality in practice has been diminished by holding that mere knowledge or information that the suit exists will not produce an estoppel, even if derived from the vendee, and that, in order to conclude the vendor, a formal requisition for his appearance as defendant must be clearly established. *Kelly* v. *The Church*, 2 Hill 115.

But it is claimed that in this case the plaintiff or Spaulding must be held to have purchased with notice of Bell's claim upon the land; and there are some authorities who hold that a person who purchases *pendente lite* takes with notice of the claim in litigation; and that such notice need not be given in any particular form, but that it is enough if the suit is entered in court to operate as notice of record in the same way that a deed recorded is notice to every one of its existence and its contents. Whether there is any good ground for that theory or not, there cannot be any doubt that in this case there was such notice to Spaulding of the pendency of the suit *Bell* v. *Woodward*, as to charge him with knowledge of Bell's claim, provided he took his mortgage after that suit was commenced.

But that was not so. The bill in which Bell's claim is established as against Woodward was not commenced until 1859, some nine years after the date of Spaulding's mortgage. But it is said that there was a former suit brought by Bell against Woodward, which involved the same subject-matter, and in which the same claim was made by Bell to-

this land ; and that the former suit was a part of the same litigation, and was sufficient as notice to Spaulding of Bell's claim to this land.

But this case finds that the Spaulding mortgage bears date in 1850 : the particular date is not given.    The first suit of *Bell* v. *Woodward* was entered at the April term, 1851, and the writ was dated March 17, 1851 (see case in *Bell* v. *Woodward,* 47 N. H. 539) ; so that it seems that Spaulding's deed was before the date of the writ in the first suit of *Bell* v. *Woodward,* and therefore he could not be charged with notice of any claim made in that suit.

But suppose the fact were otherwise, and that that first suit had been brought before Spaulding's deed was dated : that suit was terminated adversely to the plaintiffs' claim in 1856, July term, and the plaintiffs were ordered to become nonsuit.  (See *Bell* v. *Woodward,* 34 N. H. 90, 102.)    And after that, it seems no further proceedings were had by Bell or his representatives for some three years, or until 1859.    We think that upon these facts it could not be held that Spaulding was chargeable with notice of anything contained in the last bill, in *Bell* v. *Woodward.*    All the notice he could have had was of Bell's claim in 1851.    But that case was terminated against Bell after a litigation of five years ; and then the parties rested upon their arms for three years more, before any further warlike demonstrations were made.    Spaulding may well have understood, after that lapse of time, that his title was secure and undisputed, even though he had notice of Bell's claim in the first suit.    But, his deed being dated in 1850, he had no such notice.

Every species of notice is ineffectual as a restraint on existing rights, and can only operate on those rights which are subsequently acquired. But the institution of a suit for the recovery of a specific property or demand is notice only to those who acquire an interest in the subject-matter in controversy after the suit is instituted, and by purchase or grant from the parties or privies.    *French* v. *Loyal Co.,* 5 Leigh. (Va.) 627 ; *Stuyvesant* v. *Hone,* 1 Sandford's Ch. 419 ; *Stuyvesant* v. *Hall,* 2 Barb. Ch. 151 ; *White* v. *Carpenter,* 2 Paige 217 ; and *Parks* v. *Jackson,* 11 Wend. 442, where it was held by the court of errors that the institution of a suit was not notice to a prior purchaser, who had gone into possession and made expenditures on the faith of the purchase, although his deed was not in fact executed until after the institution of the suit.    *Trimble* v. *Boothby,* 14 Ohio 109 ; *Gibler* v. *Trimble, id.* 323.

It results, moreover, from the definition of notice by *lis pendens,* that it cannot continue after a final decree or judgment, which puts an end to the pendency of the suit which constitutes the notice.    *Pierce* v. *White,* 1 Bailey Eq. 234 ; *Blake* v. *Hayward, id.* 208.

A purchaser, consequently, cannot be charged in one proceeding on the ground that he bought during the pendency of another, even when both are founded on the same equity ; though it was held that it would be otherwise if the original suit abated by the death of the party, and is duly revived and prosecuted by the executor or administrator, be-

cause then it is considered as the same suit or proceeding. *Newman* v. *Chapman*, 2 Randolph (Va.) 102; *French* v. *Loyal Co.*, 5 Leigh. 721,—in the last of which cases it is said that " a *lis pendens* is not notice; and even if it were notice, it could operate merely as to those who were purchasers, *pendente lite*, from a party to the suit." And Chancellor KENT says, in *Murray* v. *Ballou*, 1 Johns. Ch. 566, 576,—" The established rule is, that a *lis pendens*, duly prosecuted, and not collusive, is notice to a purchaser so as to affect and bind his interest by the decree; and the *lis pendens* begins from the service of the *subpœna* after the bill is filed."

This plaintiff had no such notice of even the first suit between *Bell* v. *Woodward;* and we think that, if he had, it would be unreasonable to charge him with notice in *this* suit, which was not begun for some three years after the former suit was terminated adversely to the plaintiff in that case. *Watson* v. *Wilson*, 2 Dana 406; *Debell* v. *Foxworthy*, 9 B. Mon. 228.

The plea is bad in attempting to set up the plaintiff's title for him: it is a matter of substance, and might have been demurred to upon that ground. But as it is not demurred to, but the plaintiff replies other matters of substance, which make a good case for the plaintiff if made out, and the demurrer to these replications is special, assigning only the cause of duplicity, it is claimed that the defect in the plea is cured or waived. But that is quite like the case of *Leslie* v. *Harlow*, 18 N. H. 518, where the declaration was bad upon demurrer, but no demurrer was filed. A plea was filed, which attempted to answer the declaration, and to defend, and to this plea there was a special demurrer; and although the plea was clearly bad, yet the court gave judgment for the defendant because the plaintiff's declaration was bad, although it had not been demurred to,—PARKER, C. J., saying that this case well exemplifies the rule that the court will look to the *first* fault, and decides that there must be judgment in favor of the defendants on the plaintiffs' demurrer to the plea, notwithstanding the demurrer was well taken, and because the declaration was bad. A stronger case could not well be stated, and the doctrine of that case would seem to apply to and control this case. *Whittemore* v. *Shaw*, 8 N. H. 393; *Potter* v. *Baker*, 19 N. H. 166; *Claggett* v. *Simes*, 31 N. H. 22. *Case discharged.*