THE BEST FOODS, Inc., et al. v. GEN-
ERAL MILLS, Inc.

No. 321.

District Court, D. Delaware.

March 2, 1945.

George I. Haight (of Haight, Goldstein & Hobbs), of Chicago, Ill., and William T. Woodson (of Rogers, Woodson & Rogers), of Chicago, Ill., and James M. Best, of Chicago, Ill., and C. A. Southerland, of Wilmington, Del. (of Southerland, Berl & Potter), of Wilmington, Del., for plaintiffs.

H. D. Nims (of Nims & Berdi), of New York City, Vermont Hatch and J. Adam Murphy (of White & Case), both of New York City, Percy E. Williamson, Jr., of New York City, Frank J. Morley, of Minneapolis, Minn., and Aaron Finger (of Richards, Layton & Finger), of Wilmington, Del., for defendant.

LEAHY, District Judge.

1. A considerable portion of defendant's reargument was directed against plaintiffs' right to sue because of an absence of a sufficient property right. To support this conclusion defendant relies upon the Delaware cases of Coca-Cola Co. v. Nehi Corporation, Del., 36 A.2d 156; Standard Oilshares, Inc. v. Standard Oil Group, Inc., 17 Del.Ch. 113, 150 A. 174; American Radio Stores, Inc. v. American Radio & Television Stores Corporation, 17 Del.Ch. 127, 150 A. 180. Plaintiffs' right to sue and whether defendant's conduct constitutes unfair competition must be an-

swered by the local law. Gum, Inc. v. Gu-makers of America, Inc., 3 Cir., 136 F.2d 957. There is no Delaware case which specifically decides the point involved here; but the Delaware law is consistent with the general law of unfair competition as announced in the federal cases.[1] The particular question of plaintiffs' right to sue would be relevant on a motion for summary judgment or on a motion to dismiss the complaint, but it has no relevancy to the matter now before me.

2. A full reargument was had at the instance of defendant. Although reconsideration has been given to the whole problem, the former opinion will be changed in only two particulars. Confusion has been interjected into the present case as a result of defendant's refusal to accept certain allegations of the complaint. It is alleged in the complaint that the public understands "oats" to mean rolled oats, the breakfast cereal which when cooked is known as oatmeal. Now, this allegation at the present stage of the proceedings must be accepted as true, but to sustain their case plaintiffs must prove this allegation at the trial. If plaintiffs are successful in proving this allegation, many of the defenses are inappropriate.

The briefs of the parties are quite controversial over my use of the term "secondary meaning." Defendant argues that the term is used only to mean source of product. After examination of what I think is the entire case law on "secondary meaning", I concluded it must also have relation to certain characteristics of a product. Mr. Justice Holmes was the first to fix this idea. He said: "It [Coca-Cola] has acquired a secondary meaning *in which perhaps the product is more emphasized than the producer* but to which the producer is entitled." (Italics mine.) Coca-Cola Co. v. Koke Co., 254 U.S. 143, 146, 41

S.Ct. 113, 114, 65 L.Ed. 189. At best, the term "secondary meaning" is an ambiguous one. Common knowledge tells us that the public probably does not know who manufactures a particular product in many cases; but it knows that particular products of certain characteristics come from certain undefined sources. Where the public emphasis is on the product, regardless of its source, I can find no rational reason why courts should not protect the manufacturers of such products. What I mean by "secondary meaning" in the case at bar is that it must be shown that the public has come to understand that the word "oats" means a food made entirely of whole grain oats by the rolling process which when cooked is known as oatmeal; and if such be the fact, it is irrelevant that the public does not associate the product with any certain or defined source. The reason that source, though undefined, must be established is that property interest is a prerequisite to the successful maintenance of an action.

In short, to establish "secondary meaning" plaintiffs need not show that the public knew the identity of the particular manufacturers of "oats". Harvey v. American Coal Company, 7 Cir., 50 F.2d 832, supports this position. There, defendants, who had no coal mined from the Pocahontas coal field, were advertising their coal product as "Pocahontas" coal. This coal had special qualities.[2] Defendants' untruthful use of the name of plaintiff's product—"Pocahontas" coal—was enjoined by the court. In substance, the court told the defendants: "If you advertise your coal as Pocahontas coal, it must be Pocahontas coal, or you are guilty of actionable unfair competition against the producers of real Pocahontas coal." So here, if the theory of plaintiffs' complaint is proved, defendant can not use the word "oats" unless it

---

[1] Since Delaware law is consistent with federal law, it is unnecessary to consider to what extent Erie R. Co. v. Tompkins [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487] requires the application of local law in these situations. But for an illuminating discussion of this problem see Zlinkoff, Erie v. Tompkins: In Relation to the Law of Trademarks and Unfair Competition (1942), 42 Col.L.Rev. 955, 974–90; Monopoly Versus Competition, 53 Yale Law Journal 514, 542–549.

[2] Potential buyers were obviously interested primarily in the special qualities of "Pocahontas" coal, rather than the iden-

tity of the particular manufacturer or manufacturers of it. Manufacturers who advertised their coal as "Pocahontas" coal when it did not possess its peculiar qualities injured plaintiff precisely because the public had come to associate certain qualities with the name "Pocahontas" coal. In other words, to label the product "Pocahontas" coal when it did not possess the peculiar qualities associated with that name would necessarily tend to dilute the good will which the public associated with the name; and the good will is bottomed on quality, not on a particular manufacturer or "source".

is used to describe food for human consumption made entirely of whole grain oats by the rolling process and which when cooked is known as oatmeal. I accordingly decline to alter the former opinion in its essential features.

3. I shall, however, permit the fourth defense to stand against the motion to strike. That defense claims the words oats and oatmeal are in the public domain. This is a direct denial of the dominant allegation of the complaint and could, of course, be proved under the first two defenses. Nevertheless, I shall not order the defense stricken as I think it is within the spirit of the new Rules to permit a defendant to set forth specifically matters which could be proved under a general denial. Thierfeld v. Postman's Fifth Avenue Corporation, D.C., 37 F.Supp. 958. There is also included in the fourth defense an allegation that plaintiffs, in applying for registration of trade-marks of words and symbols used in connection with the words oats and oatmeal, have expressly disclaimed any exclusive rights in them apart from such trade-marks. The complaint makes no inconsistent contention, but as it will not unduly complicate the issues or tend to make the lawsuit unmanageable, I shall also permit this portion of the defense to stand.

4. The former opinion contains an obvious error. I permitted a portion of the seventh defense to stand on the theory that it was germane to the issues. This was an inadvertence and, as all of the seventh defense is not germane, it should be stricken. I shall, however, reverse my former position and permit the sixth defense to stand against the motion to strike. As I have pointed out, the theory of the complaint is that "oats" means a food made entirely of whole grain oats by the rolling process which when cooked is known as oatmeal. The sixth defense alleges that one of the plaintiffs sells "Quaker Oaties" and that this is not "a food made entirely of whole grain oats by the rolling process which when cooked is known as 'oatmeal'". Defendant argues that plaintiffs are accordingly estopped of complaining of defendant's acts with relation to its methods of marketing "Cheerioats". While this contention may not be a good defense on this theory, as I indicated in the former opinion, there is, nevertheless, another theory upon which I shall allow the defense to stand against the motion to strike. This defense is a direct denial of the fundamental theory of plaintiffs' case. If "Quaker Oaties" is not a food made entirely of whole grain oats by the rolling process which when cooked is known as "oatmeal", then the word "oats" may not have the "secondary meaning" which plaintiffs claim for it. The matter alleged in this defense could, of course, be proved under the first two defenses but, as I have pointed out above, a defense should not be stricken even though it sets forth specifically matters which could be proved under a general denial. See, Thierfeld v. Postman's Fifth Avenue Corporation, supra.

Let orders be submitted.