**UNITED STATES ex rel. RODRIQUEZ v. WEEKLY PUBLICATIONS, Inc., et al.**

District Court, S. D. New York.

Nov. 5, 1947.

See also 68 F.Supp. 767.

Pomerantz, Levy, Schreiber & Haudek, of New York City (William E. Haudek and Julius Levy, both of New York City, of counsel), for plaintiff.

Whitman, Ransom, Coulson & Goetz, of New York City (Joseph M. Proskauer, Eugene Eisenmann, and Patrick H. Sullivan, all of New York City, of counsel), for defendants.

LEIBELL, District Judge.

This is a "qui tam" action to which Secs. 231 and 232 of Title 31 U.S.C.A. apply. It seeks to charge the defendants with damages, in the nature of a penalty, for falsely and fraudulently presenting for allowance and approval claims against the United

States knowing such claims to be false and fraudulent. It is alleged that defendants tendered a magazine to the Postmaster for mailing at second class rates, when that class mailing privilege had been lost through the failure of the defendant corporation to retain, out of its agency subscription contracts, at least 30% net, over and above all commissions.

In the answer to the amended complaint, filed March 4, 1947, the defendants allege as an affirmative defense and as a counterclaim against Rodriquez (the informer), the following:

"Seventeenth: During the period mentioned in the amended complaint defendants were not personally familiar with the Postal rules and regulations relating to second class mail.

"Eighteenth: Throughout the period mentioned in the amended complaint, plaintiff Rodriquez was a trusted employee of defendant Weekly Publications, Inc. and one of his chief duties and functions was to ensure compliance by Weekly Publications, Inc. with all applicable and effective Postal statutes, rules and regulations.

"Nineteenth: All arrangements or agreements made by or on behalf of Weekly Publications, Inc. during the period mentioned in the amended complaint for the payment or allowance of commissions or compensation in connection with the solicitation of subscriptions to 'Newsweek' magazine were submitted in advance to plaintiff Rodriquez for approval and were approved by him.

"Twentieth: All payments or allowances of commissions or compensation with respect to the solicitation of subscriptions for 'Newsweek' magazine which were paid or allowed by Weekly Publications, Inc. during the period mentioned in the amended complaint were paid or allowed in reliance upon the said approval of plaintiff Rodriquez and his assurance that there was compliance with the applicable Postal statutes, rules and regulations.

"Twenty-First: If there was any infraction or violation of any applicable Postal statutes, rules or regulations by defendants during the period mentioned in the amended complaint, such infraction or violation was not intended by any of the defendants but was the result of the negligence or fraud of plaintiff Rodriquez and constituted a violation of his duties to defendants.

"Twenty-Second: Plaintiff Rodriquez is liable and should make good to defendants and indemnify them against any loss or liability resulting from this action, including defendants' expenses and counsel fees in defending this action.

"Wherefore defendants demand judgment (1) dismissing the amended complaint herein and (2) awarding them judgment upon their counterclaim against plaintiff Richard Rodriquez, together with the costs and disbursements of his action."

On October 10, 1947, Rodriquez moved this Court for an order dismissing the affirmative defense and counterclaim, on the grounds that the allegations failed to state a defense or counterclaim, and could not be asserted as a counterclaim in this action.

■ Considering the above quoted allegations as a special *defense,* it appears that most of the facts alleged could be proved under defendants' denial of the charge of fraud. However, under Rule 8(c), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, a defendant is required to set forth affirmatively certain special defenses enumerated in said subdivision, "and any other matter constituting an avoidance or affirmative defense." If there be any doubt about the defendants' right to offer proof of these matters under a general denial, the special defense should not be stricken. If it is mere surplusage, no harm will be done by letting it remain. Its presence will not embarrass the judge presiding at the trial and much might be made of its deletion. The wiser course is to let the special defense stand. Thierfeld v. Postman's Fifth Ave. Corporation, D. C., 37 F.Supp. 958; Best Foods, Inc., v. General Mills Inc., D. C., 59 F.Supp. 201.

Rodriquez moves to dismiss the counterclaim on the ground that he is not an "opposing party" and that therefore the counterclaim may not be pleaded under Rule 13(a) and (b), F.R.C.P. This is a qui tam

action.[1] The "plaintiffs" named in the title on the summons, the complaint and the amended complaint, are the United States of America on the relation of Richard Rodriquez, and Richard Rodriquez in his own behalf. The statute permits the informer to bring and carry on the suit, under conditions, such as are present in this case, "as well for himself as for the United States." 31 U.S.C.A. § 232.

In passing upon an appeal from an order of Judge Bright in this suit, denying a motion of Rodriquez to strike out a notice of appearance of the United States, filed under the statute as amended, Judge A. N. Hand described the claim pleaded in the original complaint filed, November 18, 1943, and the effect of the statutory amendment of December 23, 1943. He wrote, United States v. Weekly Publications, 2 Cir., 144 F.2d 186 at page 187:

"This is a qui tam action brought by the relator Rodriguez on November 18, 1943, for himself and the United States under the informer statute (Revised Statutes, §§ 3490–3493, 31 U.S.C.A. §§ 231–234) to recover $2,606,000 and statutory penalties, counsel fees and cost. The action is founded upon the claim that the defendants cheated the Post Office Department out of $1,303,000 by obtaining mailing rates for their publications which yielded that much less than the proper amount through false representations made to the Department. On December 23, 1943, Congress amended the Informer Statute by repealing § 3493 and by substantially reducing the maximum percentage of any recovery which might have been awarded to an informer under the prior statute and by enabling the court to fix the amount within limits which were lower than the 50% allowed before the amendment. The amendment provided that the court in which a suit is brought at the instance of the informer shall stay proceedings and cause written notice to be given forthwith to the Attorney General (who shall have sixty days to appear and carry on the suit) by sending to him a copy of the complaint together with substantially all information material to the effective prosecution of the proceeding. If the United States shall fail to enter an appearance within the period of sixty days or decline in writing to do so within that time the person bringing it may carry it on. But if the United States shall enter an appearance the suit shall be carried on solely by it. The amendment likewise states that the United States shall not be bound in its conduct of the suit by any action of the person who brought it and may proceed in all respects as if it were instituting the suit, 'Provided that if the United States shall fail to carry on the suit with due diligence for a period of six months from the date of its appearance therein or within such additional time as the court after notice may allow, such suit may be carried on by the person bringing the same' at the sole cost and charge of such person."

Although the United States of America, under the amended statute, entered its appearance in this action on March 4, 1944, and obtained from this Court various extensions of time "to prosecute and/or continue the prosecution of this case," the government finally on October 3, 1945, applied for an order "granting leave to the United States to withdraw its entry of appearance herein and to withdraw from this action." The motion was granted without opposition and an order to that effect was entered November 23, 1945.

---

[1] Qui tam actions are of ancient origin. Blackstone refers to them in Book III, Chap. 9, pp. 161, 162 as follows:

"But more usually these forfeitures created by statute are given at large to any common informer; or, in other words, to any such person or persons as will sue for the same; and hence such actions are called *popular* actions, because they are given to the people in general. Sometimes one part is given to the king, to the poor, or to some public use, and the other part to the informer or prosecutor; and then the suit is called a qui tam action, because it is brought by a person "qui tam pro domino rege, &c., quam pro se ipso in hac parte sequitur." If the king therefore himself commences this suit, he shall have the whole forfeiture. But if any one hath begun a qui tam, or *popular* action, no other person can pursue it; and the verdict passed upon the defendant in the first suit is a bar to all others, and conclusive even to the king himself."

On July 2, 1946 an amended complaint was filed.

Paragraphs 1, 11, 12 and 13 of the amended complaint allege:

"1. This suit arises under the Revised Statutes, Sections 3490 and 3491, 31 U.S.C.A. 231 and 232."

"11. (a) Since 1937, Weekly has fraudulently induced the Post Office to admit and carry, as second class matter at second class rates, over 1,000,000 'Newsweek' subscriptions, representing in excess of 66,000,000 magazine mailings.

(b) Weekly paid approximately $497,000. to the Post Office Department, computed at second class mailing rates.

(c) The true and proper rate for said magazines, as provided for by the Postal Rules and Regulations, was in excess of $1,800,000."

"12. By reason of the aforesaid false and fraudulent claims, the United States has been damaged in excess of $1,303,000."

"13. By reason of the acts and transactions herein set forth, the defendants are jointly and severally liable to the United States for double the damages sustained by it in a sum upwards of $1,303,000 and, in addition, defendants are liable jointly and severally to pay the sum of $2,000 for each such transaction, together with the costs of this action, to be distributed pursuant to the terms and provisions of the Revised Statutes, section 3491, 31 U.S.C.A. section 232."

The prayer for relief is as follows:

"Wherefore, plaintiff demands judgment jointly and severally against the defendants herein in favor of the United States and Richard Rodriquez in the amount of $2,606,000., being double the damages sustained by the United States and, in addition, the amount of forfeitures and penalties determined by this Court, together with appropriate interest and costs of this action."

Judge Rifkind sustained the amended complaint against a motion to dismiss for failure to state a claim on which relief could be granted. In an opinion, filed November 15, 1946, 68 F.Supp. 767, he describes the gravamen of the action as follows:

"Plaintiff, Rodriguez, an informer, brings a qui tam action on behalf of the United States and himself to recover from defendants statutory forfeitures and double damages under the provisions of sections 5438, 3490 and 3491 of the Revised Statutes, 31 U.S.C.A. §§ 231 and 232. Defendant Weekly Publications, Inc., (hereinafter 'Weekly'), is publisher of a weekly magazine, 'Newsweek', and the individual defendants are its principal officers.

"The amended complaint alleges as follows: Since 1937, the individual defendants entered into a conspiracy to cause defendant Weekly to present for allowance and approval false and fraudulent claims against the U. S. Government, that is, claims that the Post Office admit and carry Weekly's magazines to its subscribers as second-class mail at second-class rates."

Under § 231 of Title 31 U.S.C.A., any one who does certain acts which result in the United States being defrauded "shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit." Under § 232(A) the district court in which "the person doing or committing such act shall be found, shall wheresoever such act may have been done or committed, have full power and jurisdiction to hear, try, and determine such suit."

Subdivision (B) of § 232 reads:

"(B) Except as hereinafter provided, such suit may be brought and carried on by any person, as well for himself as for the United States, the same shall be at the sole cost and charge of such person; and shall be in the name of the United States, but shall not be withdrawn or discontinued without the consent, in writing, of the judge of the court and the district attorney, first filed in the case, setting forth their reasons for such consent."

This permission to bring and carry on the suit in the name of the United States is subject to certain conditions set forth in subdivisions (C) and (D), especially to the right of the United States through its

Attorney General to appear and carry on the suit itself. By subdivision (E) the award which the court may make to the person who brought the suit, out of any amount collected, is provided for as follows:

"(E) (1) In any such suit, if carried on by the United States as herein provided, the court may award to the person who brought such suit, out of the proceeds of such suit or any settlement of any claim involved therein, which shall be collected, an amount which in the judgment of the court is fair and reasonable compensation to such person for disclosure of the information or evidence not in the possession of the United States when such suit was brought. Any such award shall in no event exceed one-tenth of the proceeds of such suit or any settlement thereof.

"(2) In any such suit when not carried on by the United States as herein provided, whether heretofore or hereafter brought, the court may award to the person who brought such suit and prosecuted it to final judgment, or to settlement, as provided in clause (B), out of the proceeds of such suit or any settlement of any claim involved therein, which shall be collected, an amount, not in excess of one-fourth of the proceeds of such suit or any settlement thereof, which in the judgment of the court is fair and reasonable compensation to such person for the collection of any forfeiture and damages; and such person shall be entitled to receive to his own use such reasonable expenses as the court shall find to have been necessarily incurred and all costs the court may award against the defendant, to be allowed and taxed according to any provision of law or rule of court in force, or that shall be in force in suits between private parties in said court: Provided, That such person shall be liable for all costs incurred by himself in such case and shall have no claim therefor on the United States. As amended June 25, 1936, c. 804, 49 Stat. 1921; Dec. 23, 1943, c. 377, § 1, 57 Stat. 608."

Subdivision (E) (2) is the subsection applicable to the facts of this case, at this time, because the Attorney General has withdrawn and permitted the relator to carry on the suit. If a recovery be had against the defendants, Rodriquez may be awarded an "amount, not in excess of one-fourth of the proceeds" which "in the judgment of the court is fair and reasonable compensation" for the collection of any forfeiture, and he will be entitled "to receive to his own use such reasonable expenses as the court shall find to have been necessarily incurred and all costs the court may award against the defendant." Rodriquez will have an interest in any judgment to be entered herein if he establishes the claim pleaded against the defendants.

The original complaint was filed November 18, 1943, prior to the amendment of the qui tam statute on December 23, 1943. Old § 232 provided that "such suit may be brought and carried on by any person, as well for himself as for the United States." The former section also provided that the action "shall be in the name of the United States, but shall not be withdrawn or discontinued without the consent, in writing, of the judge of the court and the district attorney * * *." The new section 232 in subdivision (B) retained the above quoted provisions of old section 232.

Old section 234 provided that "such person shall be entitled to receive to his own use all costs the court may award against the defendant, to be allowed and taxed according to any provision of law or rule of court in force, or that shall be in force in suits between private parties in said court: Provided, That such person shall be liable for all costs incurred by himself in the case, and shall have no claim therefor on the United States." Old § 234 was repealed in the revision, but these provisions are now found in new § 232 (E) (2). The amendment of December 23, 1943, in § 232 (E) (1) and (2), above quoted, completely revised and limited the informer's interest in the amount of the recovery. Prior to the amendment it was provided that "The person bringing said suit and prosecuting it to final judgment shall be entitled to receive one-half the amount of such forfeiture, as well as one-half the amount of the damages he shall recover and collect; and the other half thereof shall belong to and be paid over to the United States."

In his opinion in the Rodriquez case, supra, Judge A. N. Hand wrote [144 F.2d 188]:

"We think it clear that the order here was not final. It did nothing but allow the intervention of the United States as a party in its own right pursuant to the terms of the amendment to the Informers' Act, rather than as a mere nominal party, for the amendment gave the United States no permanent status in its new capacity because control of the suit might be resumed by Rodriguez if the United States should fail to carry it on with due diligence within a period of six months time or within such additional time as the court after notice might allow. In the event of the failure of the United States to prosecute the suit diligently, it might be conducted by the person bringing the same. In other words, the intervention of the United States as a party in permanent control of the litigation has not occurred, and as the record stands its status is at present tentative. The order has up to the present time done no more than add a new party-plaintiff. Such an order is not final and no appeal from it lies. Deckert v. Independence Shares Corporation, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189; Central California Canneries Co. v. Dunkley Co., 9 Cir., 282 F. 406, 410."

■ Let us assume that the Attorney General had not withdrawn the notice of appearance he filed for the United States and that the suit was thereafter carried on by the United States, could the defendants have interposed a counterclaim against Rodriquez? I do not believe the counterclaim could have been pleaded because under the Statute, § 232(E) (1), Rodriquez would have lost all control over the litigation, indeed he would have been completely ousted from the litigation, retaining only an indirect interest, in that he might later apply for an award, out of the proceeds of the suit, of fair and reasonable compensation for disclosure of information or evidence not in the possession of the United States when the suit was brought. Rodriquez in that situation, would have none of the attributes of an "opposing party." He would cease to be a party and in respect to the defendants the United States would be the opposing party in fact and in name. The effect of § 232(E) (1) is this—"though it keeps the claim alive, (it) deprives the informer of his 'vested' interest; giving him in exchange only a quantum meruit for the value of any information which he may have contributed to eventual success". Sherr v. Anaconda Wire & Cable Co., 2 Cir., 149 F.2d 680, 681.

When the Government formally withdrew from this action, November 23, 1945, Rodriquez was again in control of the litigation within the terms of the statute as amended. It was he who could carry on the suit. His interests, "vested" or "inchoate,"[2] were revived with the important exception that the amount he may receive for his services in collecting on the claim, if successful, is left to the discretion of the court, and cannot exceed 25%. As heretofore, under the old statute, he "shall be entitled to receive to his own use," i.e. to his personal and exclusive use, "such reasonable expenses as the court shall find to have been necessarily incurred," and also "all costs the court may award against the defendant"; the expenses and the costs "to be allowed and taxed according to any provision of law or rule of court in force, or that shall be in force in suits between private parties in said court."

The first question presented resolves itself into this—is the present status of Rodriquez in this litigation under § 232(E) (2) that of an "opposing party" under Rule 13(a) and (b) relating to counterclaims? He certainly is not on the same side of the litigation as the defendants, he is opposed to them; so we may further narrow the query to this—is he a party to the litigation? Who is a party to a litigation?

The word "party" is defined in Black's Law Dictionary, 3rd Ed. 1933, p. 1332, as follows:

"A person concerned or having or taking part in any affair, matter, transaction or proceeding, considered individually."

"The term 'parties' includes all persons who are directly interested in the subject-

---

[2] Blackstone, Book II, Chap. 29, pages 437, 438.

matter in issue, who have a right to make defense, control the proceedings, or appeal from the judgment. Strangers are persons who do not possess these rights. Hunt v. Haven, 52 N.H. 162."

" 'Party' is a technical word, and has a precise meaning in legal parlance. By it is understood he or they by or against whom a suit is brought, whether in law or equity; the party plaintiff or defendant, whether composed of one or more individuals, and whether natural or legal persons, (they are parties in the writ, and parties on the record;) and all others who may be affected by the suit, indirectly or consequentially, are persons interested, but not parties. Merchants' Bank v. Cook, 4 Pick. 405."

Rodriquez is "directly interested in the subject matter in issue." He has the right "to control the proceedings" and to "appeal from the judgment" if it goes against him. He is a person "by whom a suit is brought." He is a party named in the title of the action, in the title of the summons, the complaint and the amended complaint. He is a party on the record in this court. I believe that the present status of Rodriquez in this litigation is that of a party and that the allegations of the counterclaim are on their face sufficient in law. But there is another important question to consider before determining that the counterclaim should be permitted in this action, a question that arises from the nature of the action itself.

In Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 388, 87 L.Ed. 443, the high court remarked that the qui tam action was "remedial" and imposes a "civil sanction" and that "the chief purpose of the statutes here was to provide for restitution to the government of money taken from it by fraud, and that the device of double damages plus a specific sum was chosen to make sure that the government would be made completely whole."

To permit the counterclaim pleaded would set a precedent that would be a strong deterrent to the institution of genuine informer's actions. We may assume that some informers would get their information of the fraud on the government by being implicated in the perpetration of the fraud. Fear of a counterclaim, based on the charge that the informer himself was solely involved and that the defendants relied upon his judgment and integrity, would in the average case discourage the institution of qui tam actions. The reason Congress gave a genuine informer a share in the recovery was to encourage qui tam actions in the interest of the government. It seems to me that a sensible application of the qui tam statute should bar the plea of a counterclaim against the informer.

Defendants' argument that this is a compulsory counterclaim under Rule 13(a), F.R.C.P., arising out of the same transaction and that, if he does not plead it he will lose it, is based on the assumption that Rule 13 should be applied against an informer in a qui tam action. I believe it should not because of the nature of the action and as a matter of public policy. But if defendants' argument is sound then under Rule 13(b) the defendants would have the right to counterclaim against the informer for any other claim, be it based on tort or contract. I do not believe it was the intent of Congress that the gravamen of this suit, a fraud against the United States, should become snarled in counterclaims of the defendants against the informer.

There does not seem to be any case under the Federal qui tam statute which has ruled on the right of the defendant to counterclaim against the informer. However, penalty statutes and counterclaims were involved in two cases under state statutes. In Denniston v. Trimmer, 27 Hun. 393 it was held:

"No statute is cited and we know of none which authorizes the overseers of poor of towns to borrow money, and the off-set or counterclaim therefore in a penal action, and the attempt of the defendant to set up a claim for money loaned to plaintiff as overseer of the poor, against a demand for a penalty for violation of the excise law, is without precedent and sanction of any statute, and the justice erred in overruling the demurrer interposed in the Justices' Court to that portion of the answer."

In another case, Woodward v. Conder, 33 Mo.App. 147, where an action was brought

for a statutory penalty for a trespass to land pursuant to Sec. 3921, Rev.Stat. Missouri, the Court held with respect to a counterclaim arising out of the same transaction, that:

"If this counterclaim could have been properly pleaded in this case, it was because it grew out of the 'transaction set forth in the petition as the foundation of the plaintiff's claim,' or was 'Connected with the subject-matter of the action.' R.S. sec. 2532. If this were an ordinary action for damages for a tort the question whether this counterclaim was properly pleadable would perhaps be debatable; but this is an action for a statute penalty, namely, for treble damages. The action is quasi-criminal in its nature, and the court here is of opinion that the statute in regard to counterclaims does not apply to such an action."

While neither of these actions appears to be a qui tam action, the policy inherent in each decision should apply with greater force to a qui tam action where the plaintiff is acting in place of a public prosecutor. Rule 13, F.R.C.P., should not extend to actions of this nature since the interests of the United States and the public policy expressed in the informer statute may be prejudically affected by the interposition of a counterclaim therein. If the defendant has a claim against the informer he should pursue his remedy in a direct action, thus permitting the qui tam action to proceed in accordance with the statutory direction.

For these reasons I have concluded that the counterclaim should be dismissed.