**ADMIRAL INSURANCE COMPANY, a Delaware Corporation, Petitioner,**

v.

**UNITED STATES DISTRICT COURT for the DISTRICT OF ARIZONA, Respondent,**

and

**King Ranch Properties Limited Partnership, an Arizona Limited Partnership, et al., Real Parties in Interest.**

**No. 88–7345.**

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 21, 1988 *.

Decided Aug. 9, 1989.

---

* The panel unanimously finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

**1488**

Wm. S. Hawgood, II, Dan M. Durrant, Marcia Horn Yavitz, Streich, Lang, Weeks & Cardon, P.A., Phoenix, Ariz., for petitioner Admiral Ins. Co., a Delaware corp.

Anthony P. Coles, pro hac vice, Slade & Pellman, New York City, and Allan J. Kasen, Sacks, Tierney, Kasen & Kerrick, P.A., Phoenix, Ariz., for real parties in interest Kredietbank, N.V.

John D. Everroad, Jerome B. Shultz, Timothy Berg, Fennemore Craig, Phoenix, Ariz., for real parties in interest, U S West Financial Services, Inc.

Charles L. Chester, Kevin Fallon McCarthy, Ryley, Carlock & Applewhite, Phoenix, Ariz., for real parties in interest, King Ranch Properties Ltd. Partnership, James L. King and Esther Z. King, husband and wife, Gwendolyn King Thompson, Rosemary Harbushka, James L. King, Jr., James L. King and Esther Z. King, as Trustees of the Amended and Restated Declaration and Agreement of Trust dated August 20, 1989 (originally executed June 30, 1972), as amended, Bert and Ann Ferganchick.

Before BROWNING, FARRIS and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Admiral Insurance Company petitions this court for a writ of mandamus directing the district court to vacate its order compelling production of statements obtained by Admiral's counsel in anticipation of a securities fraud action. Petitioner contends that these statements are protected from discovery by the attorney-client privilege. The district court ordered the statements produced upon plaintiffs' assertion that the information sought was otherwise unavailable because the witnesses planned to invoke the fifth amendment privilege against self-incrimination at their depositions.

Because the district court's order raises a significant issue of first impression concerning the proper scope of the attorney-client privilege in the corporate context, and the petitioner lacks an alternative avenue for relief, mandamus is an appropriate remedy. We conclude that there is no unavailability exception to the attorney-client privilege. Accordingly, the petition is granted and the district court shall vacate the order compelling production of these statements.[1]

## I

### FACTS

During the 1980s, the JNC Companies [2] (JNC) established numerous real estate limited partnerships in which limited partners invested by executing notes in favor of JNC. Admiral Insurance Company (Admiral) guaranteed payment of the notes by issuing bonds to the JNC partnerships. JNC then borrowed money from various lenders and assigned the investor notes to the lenders as collateral.

In June 1987, in anticipation of possible litigation regarding Admiral's transactions with JNC, Admiral retained the Phoenix law firm of Streich, Lang, Weeks and Cardon (Streich, Lang). In July, 1987, lenders and investors involved with the JNC partnerships filed suit in Arizona federal district court against Admiral and others,

---

1. To be precise, for reasons discussed below, we vacate the part of the order compelling production of the statements of one of the two corporate officers and dismiss the petition, insofar as it relates to the other officer, as premature.

2. JNC Companies is not a party to this petition.

alleging federal and state securities fraud, civil RICO and common law violations. Admiral's senior management directed Streich, Lang to interview the two Admiral officers who were the most knowledgeable about the JNC transactions: Edward B. Kinney, a vice-president, and Robert Gardner, an assistant secretary. A stenographer was engaged to transcribe the interviews.

Counsel interviewed Kinney and Gardner separately on July 7, 8, and 9, 1987. At the beginning of each interview, counsel advised the interviewee that Admiral had retained Streich, Lang to investigate the circumstances of Admiral's relationship with JNC in order to render legal advice to Admiral regarding its potential interests and liabilities arising from the JNC transactions; that Streich, Lang's client was Admiral and not the interviewees personally; that Admiral intended to claim for itself the attorney-client privilege and work-product protection with respect to the interviews; that the officers were being interviewed because they were the Admiral employees who knew the most about Admiral's transactions with JNC; and that Kinney and Gardner were to treat the interviews as confidential communications. Kinney resigned from Admiral on July 8, 1987, after completion of his interview. On July 14, 1987, Gardner resigned.

During the course of discovery, plaintiffs in the securities fraud action scheduled Kinney and Gardner for deposition. Both former officers informed plaintiffs that they would invoke the fifth amendment privilege against self-incrimination at deposition. In response, plaintiffs sought production of the statements given by Kinney and Gardner to Admiral's counsel. Streich, Lang moved to quash a subpoena duces tecum served upon it for production of the statements. Plaintiffs opposed the motion on grounds that their inability to obtain the information from another source rendered the statements discoverable. On June 22, 1988, the district court denied the motion to

quash, holding that "under the unique circumstances of [this] case, if Mr. Kinney and Mr. Gardner refuse to answer questions when deposed, then the statements must be produced by Admiral." [3]

Admiral then petitioned this court for a writ of mandamus and moved for an emergency stay pending disposition of the writ. This court entered a temporary stay and ordered the real parties in interest, plaintiffs below, to file a response to the petition. Upon due consideration, the court dismissed the petition as premature, concluding that the case was not ripe for review because Kinney and Gardner had not appeared at deposition and actually refused to testify.

The plaintiffs then requested that the district court fashion a procedure to circumvent the need for Kinney and Gardner to appear at deposition as a precondition for compelling production of the statements. The district court ruled that, if counsel for Kinney and Gardner submitted letters indicating that the witnesses intended to invoke the fifth amendment at deposition, the depositions need not go forward and the order compelling production of the statements would become effective. Gardner's attorney submitted such a letter accompanied by Gardner's signed verification. No letter was submitted on behalf of Kinney.

Admiral then renewed its petition for a writ of mandamus and request for an emergency stay. We entered a stay and ordered a further response to the petition.

## II

### JURISDICTION

We exercise jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651. Preliminarily, we must determine whether review of this matter is premature because the district court failed to require the witnesses to appear at deposition and to make a particularized showing of entitlement to the fifth amendment privilege [4] and be-

---

3. The district court did not make factual findings or determine whether the statements are privileged. Accordingly, our findings and conclusions are based upon our review of the state-

ments filed under seal by Admiral as part of the record in this petition.

4. *See, e.g., Baker v. Limber,* 647 F.2d 912 (9th Cir.1981) (trial court must make determination

cause it failed to determine that the information plaintiffs seek in fact is unavailable from a source other than the statements Admiral claims are privileged.[5]

■ As to Admiral's claims with respect to the statement given by Kinney, the situation remains unchanged since the court's previous consideration of this matter. Kinney's attorney has not submitted a letter under the procedures fashioned by the district court indicating his client's intent to invoke the fifth amendment if deposed. Accordingly, Admiral's petition with respect to Kinney's statement is premature and must be dismissed.

However, all preconditions for imposition of the district court's order requiring production of Gardner's statement—that is, the submission of a letter from his counsel indicating Gardner's intention to invoke the fifth amendment if deposed—have been met. Thus, the order compelling Admiral to produce Gardner's statement is now effective. If Admiral is required to produce a privileged statement, it will suffer immediate, irreparable harm. We therefore find the privilege issue ripe for review. *See generally Thomas v. Union Carbide,* 473 U.S. 568, 580, 105 S.Ct. 3325, 3332, 87 L.Ed.2d 409 (1985) (claims by pesticide manufacturers challenging constitutionality of FIFRA arbitration provisions held ripe for review where effects of scheme on manufacturers not contingent on uncertain event that might not occur). *See also* 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3532 (1984).

■ Nonetheless, in reaching the privilege issue, we do not condone the approach adopted by the district court. Specifically, we do not approve of the district court's willingness to excuse Gardner from appearing at deposition or the assumption that Gardner could and would make a showing

of whether assertion of fifth amendment privilege is justified); *Brunswick Corp. v. Doff,* 638 F.2d 108 (9th Cir.) (fifth amendment privilege cannot be claimed in the abstract), *cert. denied,* 454 U.S. 862, 102 S.Ct. 319, 70 L.Ed.2d 160 (1981).

5. For example, the district court did not determine whether another Admiral officer could testify without fear of self-incrimination about the facts plaintiffs seek. *See United States v.*

of entitlement to the fifth amendment privilege when asked specific questions. We also do not presume, as did the district court, that the information sought by plaintiffs is unavailable from a source other than Gardner's statement. Because we hold, however, that Gardner's statement to Admiral's counsel is protected unequivocally by the attorney-client privilege, it is not necessary to consider these issues.

## III

## THE AVAILABILITY OF THE WRIT

In view of the strong policy against piecemeal appeals, interlocutory review of discovery orders is highly disfavored. *United States v. Nixon,* 418 U.S. 683, 690–91, 94 S.Ct. 3090, 3098–99, 41 L.Ed.2d 1039 (1974); *Newton v. National Broadcasting Co.,* 726 F.2d 591, 592 (9th Cir.1984). Discovery orders are not final appealable orders under 28 U.S.C. § 1291, and courts have refused interlocutory review of such orders under the collateral order doctrine. *See Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 377, 101 S.Ct. 669, 675, 66 L.Ed.2d 571 (1981); *In re Subpoena Served on California Pub. Utils. Comm'n,* 813 F.2d 1473, 1476 (9th Cir. 1987). Nevertheless, review of a discovery order through the exceptional remedy of mandamus may be appropriate in the proper circumstances. *See City of Las Vegas v. Foley,* 747 F.2d 1294 (9th Cir.1984) (writ issued to prevent depositions of city officials to determine their motives in enacting zoning ordinance).

In *Bauman v. United States District Court,* 557 F.2d 650 (9th Cir.1977), we established five guidelines to determine whether mandamus is appropriate in a given case:

*Kordel,* 397 U.S. 1, 8, 90 S.Ct. 763, 767, 25 L.Ed.2d 1 (1970). As the Supreme Court made clear in *Upjohn v. United States,* 449 U.S. 383, 395, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981), the operation of an evidentiary privilege does not shield from discovery the underlying facts known to a party or a witness. Thus, plaintiffs may utilize the appropriate discovery mechanisms to obtain information known to Admiral. *See generally* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2018 (1970).

1) whether the petitioner has no other means such as an appeal, to obtain the desired relief;

2) whether the petitioner will be damaged or prejudiced in any way not correctable on appeal;

3) whether the district court order is clearly erroneous as a matter of law;

4) whether the district court's order is an oft repeated error or manifests a persistent disregard of the federal rules;

5) whether the district court's order raises new and important problems or issues of first impression.

Satisfaction of all five factors is not required. *See Valley Broadcasting Co. v. United States District Court,* 798 F.2d 1289, 1292 n. 3 (9th Cir.1986). The factors serve as guidelines, a point of departure for our analysis of the propriety of mandamus relief. *See In re Cement Antitrust Litigation,* 688 F.2d 1297, 1301 (9th Cir. 1982).

 The first *Bauman* factor is satisfied here. Typically, a nonparty aggrieved by a discovery order must subject himself to civil contempt to gain appellate review. *United States v. Ryan,* 402 U.S. 530, 532, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971). Civil contempt of a party, however, generally is not immediately appealable. *David v. Hooker, Ltd.,* 560 F.2d 412 (9th Cir.1977). Thus, a party to litigation normally must await final judgment to seek review of a discovery order. Accordingly, mandamus is the only method available to Admiral to obtain review, prior to final judgment, of the district court's order compelling production of a statement Admiral contends is privileged.

The second *Bauman* factor is also satisfied. In view of the irreparable harm a party likely will suffer if erroneously required to disclose privileged materials or communications, courts have recognized the propriety of using mandamus for the review of orders compelling discovery in the face of assertions of absolute privilege. *See, e.g., Heathman v. United States District Court,* 503 F.2d 1032 (9th Cir.1974); *In re Von Bulow,* 828 F.2d 94 (2d Cir. 1987); *In re Burlington Northern, Inc.,* 822 F.2d 518 (5th Cir.1987), *cert. denied,*

—— U.S. ——, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988); *Barclaysamerican Corp. v. Kane,* 746 F.2d 653 (10th Cir.1984). *Cf. Kerr v. United States Dist. Court,* 426 U.S. 394, 404, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976) (affirming Ninth Circuit's denial of mandamus where petitioners could claim no absolute privilege). As the Seventh Circuit stated in *Harper & Row Publishers, Inc. v. Decker,* 423 F.2d 487 (7th Cir.1970), *aff'd,* 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971): "[B]ecause maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice, and because an appeal after disclosure of the privileged communication is an inadequate remedy, the extraordinary remedy of mandamus is appropriate." *Id.* at 492. *See also In re Von Bulow,* 828 F.2d at 98 (compliance with discovery order against claim of privilege destroys right sought to be protected). Thus, if Admiral is forced to produce a privileged statement, it will be injured in a way not correctable on appeal.

The third *Bauman* factor considers whether the district court's ruling is clearly erroneous. Based upon established principles underlying the nature and purpose of the attorney-client privilege, we hold that the district court's ruling is clearly incorrect and results in an unwarranted extension of the law. *See City of Las Vegas,* 747 F.2d at 1296. Accordingly, the third factor is satisfied.

The fourth and fifth *Bauman* factors are rarely, if ever, present at the same time. Here, although the fourth *Bauman* factor is absent, the fifth factor is met. Admiral's petition raises a significant issue of first impression in this circuit that would elude review absent our exercise of supervisory mandamus authority. *See In re Cement Antitrust Litigation,* 688 F.2d at 1304–5. *See also In re Von Bulow,* 828 F.2d at 97–98. No circuit has heretofore recognized an exception to the attorney-client privilege based on a party's inability to obtain information from an unprivileged source. This issue was not resolved by the Supreme Court in *Upjohn v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), which addressed the

scope of the attorney-client privilege when the client is a corporation. To our knowledge, only one other federal court has addressed the specific question whether the privilege is available with respect to statements given by corporate employees to the corporation's attorney when the employee invokes the privilege against self-incrimination at deposition. *See Carter–Wallace, Inc. v. Hartz Mountain Indus.*, 553 F.Supp. 45, 50–51 (S.D.N.Y.1982) (interview statements of corporate employees conducted by in-house counsel protected by attorney-client privilege despite employees' invocation of fifth amendment privilege at deposition).

In these extraordinary circumstances, our exercise of jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), is justified. *See Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *In re Cement Antitrust Litigation*, 688 F.2d at 1307.

## IV

## THE PROPRIETY OF THE DISCOVERY ORDER

Pursuant to Fed.R.Evid. 501, federal law governs the availability and scope of the attorney-client privilege in nondiversity actions. *See United States v. Hodge & Zweig*, 548 F.2d 1347, 1353 (9th Cir.1977); *Odmark v. Westside Bancorporation*, 636 F.Supp. 552, 554–55 (W.D.Wash.1986). In *In re Fischel*, 557 F.2d 209 (9th Cir.1977), we set forth the essential elements of the attorney-client privilege:

(1) Where legal advice of any kind is sought

(2) from a professional legal adviser in his capacity as such,

(3) the communications relating to that purpose,

(4) made in confidence

(5) by the client,

(6) are at this instance permanently protected

(7) from disclosure by himself or by the legal adviser,

(8) unless the protection be waived.

557 F.2d at 211, *citing* 8 Wigmore Evidence § 2292 at 554 (McNaughton rev. 1961).

When the client is a corporation, special problems arise in applying the privilege. As fictitious entities, corporations can seek and receive legal advice and communicate with counsel only through individuals empowered to act on behalf of the corporation. *See Commodities Futures Trading Assoc. v. Weintraub*, 471 U.S. 343, 348, 105 S.Ct. 1986, 1990, 85 L.Ed.2d 372 (1985).

In *Upjohn v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), the Supreme Court addressed the issue of the proper scope of the attorney-client privilege in the corporate setting. Rejecting the "control group" test, the Court held that the privilege applies to communications by any corporate employee regardless of position when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation. 449 U.S. at 394, 101 S.Ct. at 685. The Court, however, declined to establish an all-encompassing test for application of the attorney-client privilege to corporations. Rather, the Court held that each case must be evaluated to determine whether application of the privilege would further its underlying purpose. 449 U.S. at 396–97, 101 S.Ct. at 686.

The purpose of the attorney-client privilege is to encourage candid communications between client and counsel. *Upjohn*, 449 U.S. at 390–91, 101 S.Ct. at 683. *See also In re Fischel*, 557 F.2d at 209. Although an expansive application of the attorney-client privilege to corporations may impose severe burdens on discovery and create a broad "zone of silence" over corporate affairs, *see Upjohn*, 449 U.S. at 395, 101 S.Ct. at 685, effective representation by counsel "depends upon the lawyer being fully informed by the client." *Id.* at 389, 101 S.Ct. at 682. *Upjohn* stands for the proposition that the advantages of preserving the privilege outweigh the inescapable disadvantages of the resultant secrecy.

■ Applying the teaching of *Upjohn*, we find that Gardner's statement to Admiral's counsel is privileged. Streich, Lang was retained by Admiral to represent it in

anticipation of litigation concerning Admiral's transactions with the JNC partnerships. Gardner and Kinney, as the management-level employees most knowledgeable about the JNC transactions, were instructed by Admiral to give statements to Admiral's counsel. The information that Gardner and Kinney furnished to Admiral's counsel related directly to the officers' roles in the JNC matter and was, therefore, within the scope of their corporate duties. Gardner and Kinney were aware that the purpose of the interviews was to enable Streich, Lang to provide legal advice to Admiral concerning its potential liability in the JNC matter. These circumstances fall squarely within *Upjohn.*

We now turn to plaintiffs' attempts to distinguish *Upjohn* and interpret it in a way that would defeat Admiral's privilege over Gardner's statement. First, plaintiffs argue that, because Admiral planned to terminate Gardner following his interview with Streich, Lang, Gardner was not an Admiral employee, but rather a de facto third-party witness.

■ This argument is without merit. We disposed of this issue in *In re Coordinated Pretrial Proceedings,* 658 F.2d 1355 (9th Cir.1981) *cert. denied,* 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982). In finding that the *Upjohn* rationale necessarily extended the privilege to former corporate employees, we stated: "Former employees, as well as current employees, may possess the relevant information needed by corporate counsel to advise the client with respect to actual or potential difficulties." 658 F.2d at 1361 n. 7.[6]

We next turn to plaintiffs' central argument in support of the district court's order compelling disclosure of Gardner's statement. Plaintiffs contend that Gardner's expressed intent to invoke the privilege against self-incrimination at deposition obstructs their access to information plaintiffs believe to be critical in establishing their claims. Plaintiffs rely upon *Upjohn* as support for the contention that Gardner's statement should be discoverable in these circumstances.

*Upjohn* involved employee responses to a questionnaire distributed by in-house counsel which the Court found to be protected by the attorney-client privilege. 449 U.S. at 396, 101 S.Ct. at 686. However, the Court noted that "the privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney...." 449 U.S. at 395, 101 S.Ct. at 685. The Court in *Upjohn* thus assumed that the adverse party could discover the information contained in the responses by deposing the employees.

■ Here, plaintiffs' ability to discover the underlying facts may be impeded by Gardner's personal claim of the privilege against self-incrimination. Plaintiffs read *Upjohn* to establish an exception to the attorney-client privilege when the information sought by an adverse party is not otherwise discoverable. We disagree.

In establishing the general framework for discovery in civil litigation, Fed.R.Civ.P. 26(b)(1) provides: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Neither this provision nor any other rule applicable to the discovery process recognizes an exception to the protections afforded privileged materials and communications because the information sought to be discovered is not available from an unprivileged source.

6. Plaintiffs also contend that Gardner was not employed by Admiral but by Jersey International Underwriting Managers, a subsidiary of Admiral, and therefore Gardner's statements to Admiral's counsel are not privileged. The district court did not decide this question and there is no evidence in the record to support the contention. Accordingly, we need not consider it. Nevertheless, even assuming the facts to be as plaintiffs represent, plaintiffs' argument is without merit. *Upjohn* rejected a mechanistic approach to applications of the attorney-client privilege in the corporate context. Thus, communications between employees of a subsidiary corporation and counsel for the parent corporation, like communications between former employees and corporate counsel, would be privileged if the employee possesses information critical to the representation of the parent company and the communications concern matters within the scope of employment.

The attorney-client privilege, like all other evidentiary privileges, may obstruct a party's access to the truth. Although it may be inequitable that information contained in privileged materials is available to only one side in a dispute, a determination that communications or materials are privileged is simply a choice to protect the communication and relationship against claims of competing interests. Any inequity in terms of access to information is the price the system pays to maintain the integrity of the privilege.[7] An unavailability exception is, therefore, inconsistent with the nature and purpose of the privilege.

This conclusion is bolstered by the effect such an exception would necessarily have on the attorney-client privilege. An unavailability exception to the privilege would force counsel to warn their clients against communicating sensitive information for fear of subsequent forced disclosure. Here, but for the attorney-client privilege, Admiral might not have directed Gardner to speak with counsel for fear of creating a transcribed statement for plaintiffs' benefit. In any case, plaintiffs' access or lack of access to the facts caused by Gardner's assertion of the fifth amendment privilege would be unchanged. Thus, in terms of access to information, the operation of the attorney-client privilege "puts the adversary in no worse position than if the communications had never taken place." *Upjohn*, 449 U.S. at 395, 101 S.Ct. at 685.

■ In ordering production of a privileged statement on the facts of plaintiffs' assertion that they could not otherwise obtain the information contained in the statement, the district court confused the attorney-client privilege with the work-product rule. The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation. Fed. R.Civ.P. 26(b)(3). Although the rule affords special protections for work-product

that reveals an attorney's mental impressions and opinions, other work-product materials nonetheless may be ordered produced upon an adverse party's demonstration of substantial need or inability to obtain the equivalent without undue hardship. *See Upjohn*, 449 U.S. at 401, 101 S.Ct. at 688.

The conditional protections afforded by the work-product rule prevent exploitation of a party's efforts in preparing for litigation. *See, e.g., Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. 533, 538 (N.D.Ca.1987) (principal function of work-product rule is to force each side to do its own work). *See also* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2021 (1970). The effort of a party or his representative in generating information needed for trial generally does not create information that will not be available to others willing to invest similar effort in discovery. Accordingly, when a party makes a substantial showing that he is unable through his efforts to obtain needed information, the balance of equities shifts in favor of disclosure of trial preparation materials.

This rationale cannot logically be extended to support an unavailability exception to the attorney-client privilege. While the work-product rule protects a client's investment in his attorney's labor to prevent unfair exploitation, the privilege protects communications between client and counsel to encourage the client to be forthcoming with his attorney so that appropriate legal advice can be offered. As Professor Saltzburg explained:

> The principal difference between the attorney-client privilege and the work product doctrine, in terms of the protections each provides, is that the privilege cannot be overcome by a showing of need, whereas a showing of need may justify discovery of an attorney's work product.

---

7. *See* McCormick on Evidence 171 (3d ed. 1984): Rules which serve to render accurate ascertainment of the truth more difficult or, in some instances, impossible may seem anomalous in a rational system of fact-finding. Nevertheless, rules of privilege are not without a rationale. Their warrant is the protection of interests and relationships which, rightly or wrongly, are regarded as of sufficient social importance to justify some sacrifice of availability of evidence relevant to the administration of justice.

Saltzburg, *Corporate and Related Attorney–Client Privilege: A Suggested Approach*, 12 Hofstra L.Rev. 279, 299 (1984).

It is, therefore, irrelevant that the purported reason the information is unavailable is Gardner's expressed intent to invoke the privilege against self-incrimination.[8] Even assuming that the information plaintiffs need to establish their claims cannot be discovered from any source other than the statement Gardner gave to Admiral's counsel, we decline to establish an unavailability exception to the attorney-client privilege. The premium paid to preserve the attorney-client privilege, as with all evidentiary privileges, can be high, rendering ascertainment of the truth more problematic. Nonetheless, an unavailability exception to the privilege is an unacceptable solution. Such an exception either would destroy the privilege or render it so tenuous and uncertain that it would be "little better than no privilege at all." *Upjohn*, 449 U.S. at 353, 101 S.Ct. at 661.

## CONCLUSION

The petition for the writ of mandamus is granted. The stay is lifted and the case is remanded to the district court with instructions to vacate the part of the order compelling production of Gardner's statement.

---

**8.** Although the privilege against self-incrimination is a personal privilege and cannot be claimed by corporate officers on behalf of a corporation, *Bellis v. United States,* 417 U.S. 85, 90, 94 S.Ct. 2179, 2184, 40 L.Ed.2d 678 (1974); *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), a corporation nevertheless may be the unintended beneficiary of a corporate employee's personal invocation of the fifth amendment privilege. *See Carter–Wallace, Inc. v. Hartz Mountain Indus.,* 553 F.Supp. 45 (S.D.N.Y.1982). In *Carter–Wallace,* Carter–Wallace sought to depose Hartz representatives concerning an investigation of wrongdoing that Hartz had ordered its in-house counsel to conduct in 1979. During their depositions, the Hartz corporate officers invoked the fifth amendment guarantee against self-incrimination. The court rejected Carter–Wallace's assertion that this unfairly provided Hartz with a fifth amendment shield. In addition, the court concluded that "interviews of Hartz employees conducted by the individuals carrying out the investigation are protected by the attorney-client privilege." *Id.* at 50. The court went on to hold that other materials containing the investigation's factual findings fell within the compass of the work-product rule and were discoverable because Carter–Wallace had made the requisite showing of need.