**MORTGAGES, INC.; John P. Mullen, Petitioners,**

v.

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA (LAS VEGAS), Respondent,**

and

Lawyers Title Insurance Corporation; Richard G. Messersmith; Deaun Messersmith; Douglas D. Vollmer; Deanna J. Vollmer; Gordon E. Beckstead; Camille Beckstead–Stockdale, Real Parties in Interest.

No. 90–70418.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 28, 1990 *.

Decided May 24, 1991.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

John Peter Lee, Theresa M. Dowling, John Peter Lee, Ltd., Las Vegas, Nev., for petitioners.

John C. Hohnhorst, Hepworth, Nungester & Felton, Twin Falls, Idaho, Gary Goodheart, Jones, Jones, Close and Brown, Monte N. Stewart, Wright and Stewart, Las Vegas, Nev., for real party in interest Lawyers Title Ins. Corp.

Michael C. Theis, U.S. Dept. of Justice, Washington, D.C., for the U.S.

James C. Tucker, Gary D. Slette, Nelson, Rosholt, Robertson, Tolman and Tucker, Twin Falls, Idaho, and John R. Lusk, Gifford and Vernon, Las Vegas, Nev., for real parties in interest Richard G. Messersmith, Deaun Messersmith, Douglas D. Vollmer, and Deanna J. Vollmer.

Lloyd J. Webb, Webb, Burton, Carlson, Pedersen and Webb, Twin Falls, Idaho, and Keith Gregory, Las Vegas, Nev., for real parties in interest Gordon E. Beckstead and Camille Beckstead–Stockdale.

Before ALARCON, POOLE and NORRIS, Circuit Judges.

PER CURIAM:

Mortgages, Inc. ("Mortgages") and its president, John P. Mullen, petition this court for a writ of mandamus directing the district court to dismiss third-party complaints filed against them by defendants in an action brought under the False Claims Act, 31 U.S.C. §§ 3729–3733 ("FCA").

The FCA provides civil penalties against a person who submits a false claim for payment to the United States. 31 U.S.C. § 3729. To encourage reporting of false claims, the FCA provides that any person may commence, for the benefit of the United States, a civil action for a violation of section 3729. 31 U.S.C. § 3730(b). The United States is served with a copy of the complaint, and if the government elects to proceed with the action, the originator of the suit remains as a qui tam plaintiff. 31 U.S.C. § 3730(b) & (c). If the action is successful, the qui tam plaintiff is entitled to a portion of the recovery. 31 U.S.C. § 3730(d).

Petitioners are qui tam plaintiffs in the FCA action below. They contend that as such, they should not be required to answer the third-party complaints filed against them. We agree. Accordingly, the petition is granted and the district court is directed· to dismiss the third-party complaints filed against petitioners.

I

Mortgages is a mortgage lending company. In 1983, Mortgages accepted applications for loans insured by the Department of Housing and Urban Development ("HUD"). Defendants' applications allegedly contained false and misleading statements. Following default on the loans, HUD was required to cover several million dollars in losses. Mortgages entered into a settlement with the government whereby Mortgages agreed to indemnify the government for $437,000.

The district court action was initiated in 1988 when Mortgages filed a complaint under the FCA, offering the United States information it had obtained regarding defendants' allegedly false statements in the applications for the HUD-insured loans.

The United States elected to proceed with the action; petitioners remained as qui tam plaintiffs.

Defendants then filed third-party complaints against petitioners, alleging numerous state law claims.[1] Pursuant to each of these claims, defendants sought as relief full indemnification and/or contribution from Mortgages against any recovery or judgment in favor of the United States in the FCA action. Petitioners filed a motion to dismiss the third-party complaints. After the district court denied the motion, petitioners filed this petition for writ of mandamus and requested an emergency stay. We granted the stay and ordered a response to the petition. On September 28, 1990, we granted the petition in a brief unpublished order. We now explain our reasons for doing so.

## II

Under the All Writs Act, 28 U.S.C. § 1651(a), we have the power to issue the requested writ. We must nevertheless determine whether mandamus is a proper remedy here. *See Valenzuela–Gonzalez v. United States District Court*, 915 F.2d 1276, 1278 (9th Cir.1990).

■ In *Bauman v. United States District Court*, 557 F.2d 650, 654 (9th Cir. 1977), we established five guidelines to aid in our determination of whether mandamus is appropriate in a given case:

1) whether the petitioner has no other means such as an appeal, to obtain the desired relief;

2) whether petitioner will be damaged or prejudiced in any way not correctable on appeal;

3) whether the district court is clearly erroneous as a matter of law;

4) whether the district court's order is an oft repeated error or manifests a persistent disregard of the federal rules;

5) whether the district court's order raises new and important problems or issues of first impression.

Satisfaction of all five factors is not required. *See Admiral Ins. Co. v. District Court of Arizona*, 881 F.2d 1486, 1491 (9th Cir.1989). The factors serve only as guidelines, a point of departure for our analysis of the propriety of mandamus relief. *Id.*

■ The first *Bauman* factor is satisfied here. An order denying a motion to dismiss a counterclaim is not immediately appealable. *Jetco v. Jiffy Products Co.*, 192 F.2d 852 (9th Cir.1951).[2] A party must normally await final judgment to seek review of such an order. Accordingly, only by mandamus may petitioners obtain review, prior to final judgment, of the district court's decision compelling them to answer the counterclaims.

■ The second *Bauman* factor concerns prejudice to the petitioner. Petitioners contend the district court's decision will result in delay and cause them to incur great expense. Generally, the fact that the lower court's order will result in additional cost and unreasonable delay does not demonstrate sufficient prejudice to warrant mandamus relief. *In re Sugar Antitrust Litigation*, 559 F.2d 481, 484 (9th Cir.1977).

■ The fourth and fifth factors are rarely, if ever, present at the same time. *Admiral Ins.*, 881 F.2d at 1491. Here, although the fourth factor is absent, the fifth is present. Indeed, it is the fifth factor that drives our decision to determine this issue by mandamus. Whether a qui tam plaintiff in a FCA action should be required to answer counterclaims is a significant question of first impression. To our knowledge, no circuit court has yet

---

**1.** These claims included breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, fraud, negligence, negligent misrepresentation and conspiracy.

**2.** The district court properly construed the claims raised in defendants' third-party complaints to be counterclaims brought pursuant to

Fed.R.Civ.P. 13. Third-party claims may only be brought against a non-party. Fed.R.Civ.P. 14. The False Claims Act provides that a qui tam plaintiff shall have the right to continue as a party. 31 U.S.C. § 3730(c)(1). We will therefore refer to these claims as "counterclaims." However, this is a distinction without a difference for the purposes of this opinion.

addressed this issue. The two district courts that have examined this question reached the opposite result of that of the district court in the underlying action here. *See United States v. Kennedy,* 431 F.Supp. 877 (C.D.Cal.1977) (defendants in FCA action are not entitled to indemnification or contribution from qui tam plaintiffs); *United States ex rel. Rodriguez v. Weekly Publications, Inc.,* 74 F.Supp. 763 (S.D.N.Y. 1947) (counterclaims cannot be filed against qui tam plaintiffs).

Moreover, where the resolution of the legal questions raised in the petition will "add importantly to the efficient operation of the district courts throughout the circuit," mandamus relief may be warranted. *See In re Cement Antitrust Litigation (MDL No. 296),* 688 F.2d 1297, 1301 (9th Cir.1982), *aff'd for absence of quorum sub nom. Arizona v. United States District Court,* 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983). Thus, for example, review by mandamus is appropriate where the decision will clarify an issue likely to confront lower court judges in a number of suits before appellate review is possible. *Id.* at 1303.

Here, the issue of whether counterclaims may be filed against qui tam plaintiffs is one that may confront a number of district court judges. In 1986, Congress substantially amended the FCA with the intent of encouraging such actions. At least one commentator has indicated these amendments will result in an increased filing of FCA lawsuits. Oparil, *Coming Impact of the Amended False Claims Act,* 22 Akron L.Rev. 525, 560 (1989). A ruling from this court on this issue at this time will increase the efficient operation of the district courts.

The final factor we consider is the third *Bauman* factor: whether the district court's decision was clearly erroneous. Defendants argue they are entitled to seek indemnification or contribution from the petitioners because petitioners were responsible for the fraud visited upon the government. For the reasons set out below, we conclude that there is no right of indemnity or contribution among participants in a scheme to defraud the government in violation of the FCA. Accordingly, we conclude that the district court's denial of petitioners' motion to dismiss the counterclaims was clearly erroneous.

### III

Where one or more persons have committed a fraud upon the government in violation of the FCA, each is joint and severally liable for the treble damages and statutory penalty. 31 U.S.C. § 3729(a). *See also United States v. Hughes,* 585 F.2d 284, 286 n. 2 (7th Cir.1978); *United States v. Aerodex,* 469 F.2d 1003, 1012 (5th Cir.1972). For the purposes of deciding this petition, we will assume that all of the elements of typical claims for contribution or indemnification exist. Thus, we assume that the government will recover from defendants under the FCA, and that the qui tam plaintiffs bear significant responsibility for the false statements in the loan applications. Even with these assumptions, however, we find no basis for recognizing a right of contribution or indemnification in this case.

▮ The right to contribution and indemnification are no different in principle from other implied rights of action. *See Levit v. Ingersoll Rand Financial Corporation,* 874 F.2d 1186, 1191 (7th Cir.1989). A defendant held liable under a federal statute has a right to contribution or indemnification from another who has also violated the statute only if such right arises (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) via the power of the courts to formulate federal common law. *Texas Industries, Inc. v. Radcliff Materials,* 451 U.S. 630, 638, 101 S.Ct. 2061, 2065, 68 L.Ed.2d 500 (1981) (no right of contribution under antitrust laws); *Northwest Airlines v. Transport Workers Union of America,* 451 U.S. 77, 90–91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981) (no right of contribution under Title VII or Equal Pay Act).[3]

---

**3.** Although the decisions in *Texas Industries* and *Northwest Airlines* dealt only with the right of

contribution, the legal framework established in these cases has been extended to the right to

The FCA does not speak to the right of contribution or indemnification. We must therefore look to Congressional intent to determine whether Congress implicitly created such a right of action. *Texas Industries*, 451 U.S. at 639, 101 S.Ct. at 2066. The Supreme Court engaged in this exercise in *Texas Industries*. There, defendants in a federal antitrust action sought contribution from other participants in a conspiracy to violate antitrust laws. The Court stated "the Sherman Act and the provision for treble damages actions under the Clayton Act were not enacted for the benefit of participants in a conspiracy to restrain trade." *Id.* Rather, these provisions were intended "to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers." *Id.* In addition, no reference to contribution was found in the legislative history of the antitrust laws. Based on these factors, the Court found Congress did not intend to create a private right of action for contribution when it enacted these provisions. *Id.* at 639–640, 101 S.Ct. at 2066.

■ We cannot find anything in the legislative history of the FCA that mentions contribution or indemnification. Indeed, the framers of the Act recognized that wrongdoers might be rewarded under the Act, acknowledging the qui tam provisions are based upon the idea of "setting a rogue to catch a rogue." Cong. Globe, 37th Cong. 3d Sess. 955–56 (1863) (remarks of Sen. Howard). Moreover, the purpose of the damages provisions of the FCA is to deter future fraudulent claims, as well as recoup the government's losses due to fraud. *See United States v. McLeod*, 721 F.2d 282, 285 (9th Cir.1983). The FCA is in no way intended to ameliorate the liability of wrongdoers by providing defendants with a remedy against a qui tam plaintiff with "unclean hands." Congress did not intend to create a right of action for contribution or indemnification under the FCA.

Thus, if any right to contribution or indemnity exists, it must arise under federal

indemnity. *See Levit*, 874 F.2d at 1191; *Green v. United States Dept. of Labor*, 775 F.2d 964,

common law. *Texas Industries*, 451 U.S. at 640, 101 S.Ct. at 2066. Federal courts have the power to fashion federal common law in those few instances where "a federal rule of decision is 'necessary to protect uniquely federal interest.'" *Id.* The right of recovery from another wrongdoer, however, does not implicate any such interests. *See id.* at 642, 101 S.Ct. at 2067. We decline, therefore, to formulate federal common law on this basis.

In addition, Congress may empower federal courts to make federal common law when a statute contains sweeping language and its legislative history indicates Congress's expectation that the courts will "give shape to the statute's broad mandate by drawing on common-law tradition." *National Society of Professional Engineers v. United States*, 435 U.S. 679, 688, 98 S.Ct. 1355, 1363, 55 L.Ed.2d 637 (1978). Where, however, Congress has enacted a comprehensive legislative scheme, including integrated procedures for enforcement, there is a strong presumption that Congress did not intend the courts to supplement the remedies enacted. *Northwest Airlines*, 451 U.S. at 97, 101 S.Ct. at 1583.

Such is the case here. The FCA includes comprehensive procedures for enforcement, including a provision to limit the reward of a qui tam plaintiff if the court determines that party is also a wrongdoer. *See* 31 U.S.C. § 3730(d)(3). "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979). In addition, nothing in the Act prevents the government from naming the qui tam plaintiff as a defendant. The FCA allows no room for the creation of additional federal common law.

■ Finally, federal courts may formulate federal common law in those areas dominated by strong national or federal concerns such as controversies between states, admiralty matters, or foreign rela-

971 (8th Cir.1985).

tions. *Sederquist v. Court*, 861 F.2d 554, 556 (9th Cir.1988). *See also* 19 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4514 at 223–24, 249. No such concerns exist in FCA actions.

Because there is no basis in the FCA or federal common law to provide a right to contribution or indemnity in a FCA action, we conclude that there can be no right to assert state law counterclaims that, if prevailed on, would end in the same result. The district court clearly erred when it denied petitioners' motion to dismiss the counterclaims filed by defendants.

## IV

Mandamus is a proper remedy here. *See Valenzuela–Gonzalez*, 915 F.2d at 1278. Accordingly, the petition for writ of mandamus is granted. The case is remanded to the district court with instructions to vacate its order requiring petitioners to answer the third party complaints. The time for filing any petition for rehearing or petition for certiorari starts to run from the date of filing of this opinion.